Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/07/2022 09:06 AM CDT

STATE OF NEBRASKA, APPELLEE, v.
RUBIN J. THOMAS, APPELLANT.
___ N.W.2d ___

Filed July 15, 2022.    No. S-21-551.

1. **Waiver: Appeal and Error.** Whether a party waived his or her right to appellate review is a question of law.
2. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.
3. **Pleas: Waiver.** A voluntary guilty plea or plea of no contest waives all defenses to a criminal charge.
4. **Effectiveness of Counsel: Pleas.** When a defendant pleads guilty or no contest, the defendant is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel.
5. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.
6. ____: ____. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.
7. ____: ____. To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.
8. **Words and Phrases.** A reasonable probability is a probability sufficient to undermine confidence in the outcome.
9. **Convictions: Effectiveness of Counsel: Pleas: Proof.** When a conviction is based upon a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows

a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest.

10. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

11. **Effectiveness of Counsel: Records: Appeal and Error.** Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. Conversely, an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.

12. **Right to Counsel: Waiver: Effectiveness of Counsel.** Appointed counsel must remain with an indigent accused unless one of the following conditions is met: (1) The accused knowingly, voluntarily, and intelligently waives the right to counsel and chooses to proceed pro se; (2) appointed counsel is incompetent, in which case new counsel is to be appointed; or (3) the accused chooses to retain private counsel.

13. **Judgments: Justiciable Issues.** Justiciability issues that do not involve a factual dispute present a question of law.

14. **Judges: Recusal.** In order to demonstrate that a trial judge should have recused himself or herself, the moving party must show that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.

15. **Judges: Recusal: Presumptions.** A defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality.

16. **Judges: Recusal.** Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion directed to a trial judge.

17. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.

18. **Sentences: Appeal and Error.** A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court.

19. ____: ____. When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles.

20. **Judges: Words and Phrases.** A judicial abuse of discretion exists only when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

21. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.

22. ____. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Lancaster County: Susan I. Strong, Judge. Affirmed.

Christopher Eickholt, of Eickholt Law, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Rubin J. Thomas appeals the convictions and sentences resulting from his no contest pleas to changes of conspiracy to commit robbery and conspiracy to commit burglary. Thomas argues the district court erred by not discharging his appointed counsel, by revoking his bond, and by not recusing itself prior to sentencing. He also argues that he received ineffective

assistance of counsel and that his sentences were excessive. We affirm.

## I. BACKGROUND

In October 2019, the State filed an information charging Thomas with two counts of first degree murder and one count of use of a firearm to commit a felony. The murder charge was based on a felony murder theory: the State alleged that on July 24, 2019, Audrea S. Craig and Martae Green were killed during Thomas' perpetration or attempted perpetration of a robbery.

The State later filed an amended information, adding an allegation that Thomas committed attempted burglary on July 11, 2019. This amended information also alleged that, based on prior convictions, Thomas should be sentenced as a habitual criminal.

The State and Thomas eventually reached a plea agreement in April 2021. Pursuant to the plea agreement, the State filed a second amended information charging Thomas with conspiracy to commit robbery and conspiracy to commit burglary. The second amended information alleged that Thomas conspired with others to rob Craig on July 24, 2019, and that he conspired with others to commit a burglary on July 11, 2019. As part of the plea agreement, the State agreed not to pursue other charges regarding these incidents and to dismiss an unrelated charge; Thomas agreed to plead no contest to the charges in the second amended information.

At the plea hearing, the district court asked the State to explain what the evidence would show if the State proceeded with the charges at issue. With respect to the conspiracy to commit burglary charge, the prosecutor stated that on July 11, 2019, Thomas and several other individuals met at a location near 27th and South Streets in Lincoln, Nebraska, where they planned to break into a nearby residence and steal money and/or marijuana. Thomas had been in the residence previously and unlocked a window to allow for easy entrance, but when they arrived at the residence, the window was locked.

Members of the group tried to pry the window open and attempted to kick in a door, but when they saw children looking out of a window of the residence, they left the area.

With respect to the conspiracy to commit burglary charge, the prosecutor summarized evidence that a group of individuals planned to break into the same residence to commit a robbery. The group included Thomas; Green; Green's brother, Charles Gresham; and two other individuals. The group gathered on the evening of July 23, 2019, and then in the early morning hours of the next day, Thomas led the group to the area. Green and Gresham entered the residence armed with handguns and threatened Craig and her boyfriend. A struggle ensued and multiple gunshots were fired. Green and Gresham quickly departed. Craig died at the scene as a result of multiple gunshot wounds. Thomas and the others transported Green to a local hospital where he was pronounced dead as a result of a gunshot wound a short time later.

The district court accepted Thomas' no contest pleas to the conspiracy to commit robbery and conspiracy to commit burglary charges and convicted him on both counts. The district court later sentenced Thomas to consecutive terms of imprisonment of 26 to 32 years for conspiracy to commit robbery and 14 to 20 years for conspiracy to commit burglary.

Additional background regarding the issues Thomas raises on appeal are discussed in the analysis section below.

## II. ASSIGNMENTS OF ERROR

Thomas assigns a number of errors on appeal. We have condensed, restated, and divided them into several categories for ease of analysis. First, Thomas assigns errors concerning the district court's response to motions he filed to discharge his court-appointed trial counsel. Thomas contends that the district court erred by not discharging trial counsel and by conducting an off-the-record hearing on one of Thomas' motions to discharge. Thomas also asserts that his counsel was ineffective for failing to withdraw as counsel and for permitting the off-the-record hearing.

Thomas' second category of assigned errors relates to the district court's revocation of Thomas' bond. Here, Thomas contends that the district court erred by revoking his bond and by not recusing itself after explaining its decision to revoke the bond. He also asserts that his counsel was ineffective for failing to move for the district court's recusal after the bond revocation.

In addition to the above assignments of ineffective assistance of counsel, Thomas also assigns that his trial counsel was ineffective in two other respects. He claims that his counsel was ineffective for failing to investigate an alibi defense and for failing to subpoena or interview a named potential witness.

Finally, Thomas assigns that his sentences were excessive.

## III. ANALYSIS

### 1. Attempts to Discharge Trial Counsel

#### (a) Additional Background

After charges were filed but before Thomas entered his plea, Thomas filed several pro se motions to discharge his trial counsel. Thomas filed his first such motion in August 2020. At a hearing on the motion, however, Thomas' trial counsel stated that it was his understanding that Thomas wished to withdraw the motion. The district court then inquired of Thomas whether that was correct. Thomas responded, "Yes, ma'am."

Approximately 2 months later, in October 2020, Thomas filed a second pro se motion to discharge his counsel. In the motion, Thomas expressed frustration that while he did not wish to enter a plea deal, his appointed counsel was encouraging him to do so. He asked that new counsel be appointed to represent him. At a hearing on Thomas' second motion, his counsel requested that the prosecutors be excused from the courtroom, so that Thomas could discuss his motion with the district court. The district court then asked the prosecutors to leave the courtroom, and the record reflects there was an in camera hearing on the motion. When the prosecutors

returned, the district court noted that it overruled Thomas' motion for new counsel.

On April 6, 2021, Thomas filed a third pro se motion to discharge his counsel. Thomas asserted that his counsel had told him numerous times that he would be found guilty at trial. Thomas claimed that he did not trust his counsel and again asked that new counsel be appointed to represent him.

Just over a week after Thomas filed his third motion to discharge counsel, on April 14, 2021, he entered his no contest pleas. There is no indication in our record that the district court took action with respect to the motion to discharge counsel before accepting Thomas' pleas.

After the State presented the factual basis for Thomas' pleas at the plea hearing, the following exchange took place between Thomas and the district court:

> THE COURT: Have you told your attorney everything you know about this case?
>
> [Thomas]: Yes, ma'am.
>
> THE COURT: Are you aware of anything that could help you that you've not already discussed with your attorney?
>
> [Thomas]: No, ma'am.
>
> THE COURT: Are you satisfied with the job your attorney has done for you?
>
> [Thomas]: Yes, ma'am.
>
> THE COURT: And, insofar as this case is concerned, do you believe your attorney is competent and knows what he is doing?
>
> [Thomas]: Yes, ma'am.
>
> THE COURT: Have you had enough time to talk with your attorney about this case?
>
> [Thomas]: Yes, I have.
>
> THE COURT: And, before we go any further here today, do you need any more time to talk to him about anything?
>
> [Thomas]: No, ma'am.

### (b) Standard of Review

[1,2] Whether a party waived his or her right to appellate review is a question of law. *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018). When reviewing questions of law, an appellate court resolves the questions independently of the trial court's conclusions. *Id.*

### (c) Assigned District Court Error Analysis

Thomas argues that the district court erred by not discharging his trial counsel and by holding an off-the-record hearing on Thomas' second motion to discharge his counsel. But these arguments have been waived by Thomas' no contest pleas.

[3,4] A voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Jaeger, ante* p. 69, 970 N.W.2d 751 (2022). When a defendant pleads guilty or no contest, the defendant is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.* Thomas' challenges to the district court's rulings with respect to his motions to discharge his trial counsel do not fall into these limited categories. They have therefore been waived, and we will not address their merits.

### (d) Ineffective Assistance of Counsel Analysis

Thomas also asserts that he received ineffective assistance of counsel with respect to his attempts to discharge his trial counsel. He assigns that his counsel was ineffective for failing to withdraw despite Thomas' requests that he be discharged and for permitting the off-the-record hearing on his second motion to discharge.

[5-9] Before turning to Thomas' ineffective assistance of counsel claims, we briefly review the well-established law governing such claims. To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *Id.* To show that counsel's performance was deficient, a defendant must show

that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* When a conviction is based upon a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest. *Id.*

[10,11] When, as in this case, a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *State v. Drake, ante* p. 219, 971 N.W.2d. 759 (2022). The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.* Conversely, an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id.*

[12] Thomas appears to take the position on appeal that his appointed trial counsel should have unilaterally withdrawn as counsel. The record establishes that Thomas' counsel did not perform deficiently by remaining as counsel. Appointed counsel must remain with an indigent accused unless one of the following conditions is met: (1) The accused knowingly,

voluntarily, and intelligently waives the right to counsel and chooses to proceed pro se; (2) appointed counsel is incompetent; or (3) the accused chooses to retain private counsel. *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013). Nothing in our record indicates that Thomas ever expressed a desire to proceed pro se or to retain private counsel. Absent such a request from Thomas or an order appointing substitute counsel, appointed trial counsel could not simply withdraw.

In addition, we find that the record establishes that Thomas would not be able to establish prejudice as to either of his ineffective assistance of counsel claims related to his motion to discharge his counsel. Because Thomas was convicted based on his no contest pleas, he must show a reasonable probability that if counsel had performed adequately, he would have insisted on going to trial. See *State v. Anderson, supra*. Our record, however, conclusively undermines any notion that Thomas would have rejected the plea agreement and proceeded to trial if his counsel had performed in the manner Thomas alleges he should have. At the same hearing at which Thomas entered his pleas, he informed the district court that he was satisfied with his attorney and believed his attorney was competent. Thomas makes no argument on appeal that he did not enter his pleas knowingly and voluntarily. The record thus establishes that despite any disagreements with counsel over the course of the representation, Thomas decided to accept the plea agreement and plead no contest to the charges. We find no reasonable probability that he would have insisted on going to trial.

Thomas' assignments of error related to his motions to discharge trial counsel are meritless.

## 2. BOND REVOCATION

### (a) Additional Background

At Thomas' plea hearing, after the district court accepted the pleas, Thomas' counsel requested that the district court reduce Thomas' bond. Thomas' counsel noted that another individual

alleged to have been involved in the July 24, 2019, break-in recently requested and received a bond reduction. The State did not object to the request and deferred to the district court's discretion. The district court agreed to reduce Thomas' bond.

Two days after the plea hearing, a "Bond Notice" was filed in Thomas' case. This document was signed by an individual who acknowledged that any money she posted for Thomas' bond would be posted in Thomas' name and returned to him upon release of the bond. Later that same day, the district court entered an order revoking Thomas' bond. In its order, the district court stated that "in reconsideration of the status of the case," it was vacating the previous order and revoking Thomas' bond.

Thomas subsequently filed a motion for bond review. At a hearing on that motion, Thomas' counsel argued that the revocation appeared improper, because the only fact that had changed after the bond reduction was that Thomas had begun the process of posting the bond.

At the conclusion of the bond review hearing, the district court declined to reinstate the bond. The district court explained that there was no "impropriety" in the decision to revoke the bond. The district court noted that it had revoked bond for both Thomas and another individual allegedly involved in the July 24, 2019, break-in; that Thomas had been convicted of a Class II felony and Class IIA felony; and that two people had died in the break-in. The district court observed that probation or short sentences were "highly unlikely" under the circumstances, but also indicated that it had not prejudged the matter, reviewed the presentence investigation, or decided what the sentences would be. The district court stated, "I feel that I had made an error in setting bond for those two individuals, and I was simply attempting to correct that error."

### (b) Standard of Review

[13] Justiciability issues that do not involve a factual dispute present a question of law. *Bramble v. Bramble*, 303 Neb. 380, 929 N.W.2d 484 (2019).

(c) Analysis of Assigned District Court Error

Thomas argues that the district court erred by revoking his bond. Not only, however, does Thomas not offer any authority in support of this argument, but his counsel acknowledged at oral argument that we could not effectively remedy any such error at this stage. We agree and conclude the issue is moot.

Now that Thomas has been sentenced to a term of incarceration, we could not remedy any error with respect to the bond set by the district court. This situation is akin to that presented in *State v. Harig*, 192 Neb. 49, 218 N.W.2d 884 (1974). In that case, the defendant argued that the amount of pretrial bail set by the trial court was excessive. We held that the issue was not reviewable after a conviction and sentence. We conclude the same is true here. Because we could not provide any meaningful relief, the issue is moot. See *Chaney v. Evnen*, 307 Neb. 512, 518, 949 N.W.2d 761, 767 (2020) ("[t]he central question in a mootness analysis is whether changes in circumstances have forestalled any occasion for meaningful relief").

In addition to his argument that the district court erred by revoking his bond, Thomas presents a related argument that the bond revocation and the trial judge's comments explaining that decision demonstrated that she could not be fair and impartial. Thomas contends the trial judge should have recused herself at that point. We find this issue is waived.

The trial judge made the comments that Thomas claims demonstrated that she could not be fair and impartial at the bond review hearing in April 2021. Sentencing did not occur until June 2021. Despite having the opportunity to do so, Thomas did not seek the trial judge's disqualification prior to sentencing. We have held that a litigant waives the issue of judicial disqualification if it is not presented "at the earliest practicable opportunity." *State v. Buttercase*, 296 Neb. 304, 315-16, 893 N.W.2d 430, 439 (2017). Because Thomas failed to raise the issue of judicial disqualification at the earliest practicable opportunity, the issue is waived.

### (d) Ineffective Assistance of Counsel Analysis

While Thomas has waived any contention that the trial judge erred by failing to recuse herself, he also contends that his trial counsel was ineffective for not moving for the trial judge's recusal. We find that the record establishes that Thomas would not be able to establish that his counsel performed deficiently, because any such motion would have failed.

[14-16] The Nebraska Revised Code of Judicial Conduct states that a judge must recuse himself or herself from a case if the judge's impartiality might reasonably be questioned. Neb. Rev. Code of Judicial Conduct, § 5-302.11. See, also, *State v. Fuentes*, 302 Neb. 919, 926 N.W.2d 63 (2019). In order to demonstrate that a trial judge should have recused himself or herself, the moving party must show that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown. See *State v. Collins*, 283 Neb. 854, 812 N.W.2d 285 (2012). In addition, a defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality. *Id.* Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion directed to a trial judge. *State v. Buttercase, supra*.

Thomas contends that the trial judge's comments explaining the decision to revoke Thomas' bond demonstrated that she had predetermined the issue of sentencing and that a reasonable person would question her impartiality. He also contends that the fact that the trial judge revoked the bond without any request from the State demonstrates partiality. We disagree with both arguments.

In support of his contention that the trial judge had predetermined the issue of sentencing, Thomas focuses on certain comments the trial judge made regarding potential sentences, but he ignores the trial judge's express statements that she had not yet decided how Thomas would be sentenced. As for the absence of a request from the State to revoke Thomas' bond,

the trial judge explained that she "simply felt that [she] had made an error" in setting the bond. Thomas presents no argument that the district court lacked authority to reconsider its bond order as it did here, much less explain how such a ruling, even if erroneous, would be one of those rare judicial rulings that constitute a valid basis for a recusal motion. See *State v. Buttercase, supra*. Had a motion to recuse the trial judge been filed on the bases Thomas asserts, he would not have been able to carry the heavy burden necessary to overcome the presumption of judicial impartiality. See *State v. Collins, supra*. Accordingly, Thomas' counsel was not ineffective in failing to seek recusal. See *State v. Anderson*, 305 Neb. 978, 988, 943 N.W.2d 690, 699 (2020) ("as a matter of law, counsel is not ineffective for failing to make a meritless objection").

### 3. Other Ineffective Assistance of Counsel Claims

#### (a) Additional Background

Thomas assigns that his counsel was ineffective in two other respects we have not yet addressed. He first asserts that his counsel was ineffective for failing to investigate his alibi defense. Relevant to that claim, Thomas filed a notice of an intention to rely upon an alibi pursuant to Neb. Rev. Stat. § 29-1927 (Reissue 2016). Thomas' appellate brief does not provide any details as to his alibi defense.

Thomas also contends that his counsel was ineffective for failing to subpoena or interview Herschel Bradley, an individual Thomas claims had evidence that was helpful to his defense. Thomas states in his appellate brief that he does not believe his counsel investigated or interviewed this potential witness. His appellate brief does not provide details as to what information Bradley might have possessed.

#### (b) Analysis

[17] The State suggests that Thomas' allegations concerning his counsel's failure to investigate his alibi defense and to investigate and interview Bradley were not sufficient to raise those claims. An ineffective assistance of counsel claim is

raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018).

We find that Thomas' allegations are not sufficient to raise the claim relating to the alibi defense but are sufficient to raise the claim relating to Bradley. In *State v. Golyar, supra*, a defendant asserted that counsel was ineffective for failing to investigate potential alibis. The defendant did not, however, identify what the potential alibis were. We found that the allegations were not sufficient to raise the claim, because a potential postconviction court would not be able to determine if a failure to pursue an alibi claim was the same one raised on direct appeal. As in *Golyar*, Thomas has not identified any specific alibis and thus has not sufficiently raised the claim.

The State points out that while Thomas identifies Bradley as a person his counsel should have interviewed and investigated, he does not specify what information would have been gained from Bradley. But our law does not require the specification of such information on direct appeal. As we recently explained, an assertion on direct appeal that counsel was ineffective for failing to investigate unidentified "witnesses" is not sufficient to preserve the claim, but a claim is preserved if the defendant provides names or descriptions of any such witnesses. See *State v. Blake*, 310 Neb. 769, 798, 969 N.W.2d 399, 421 (2022). Thomas has done so here with respect to Bradley.

This leaves the question of whether the record is sufficient to review Thomas' claim that his counsel was ineffective for failing to interview or investigate Bradley. The State contends that the record is sufficient to reject this claim. The State argues that given Thomas' admissions during the plea colloquy that he told his counsel everything he knew about the case and that he was satisfied with his counsel's work, "he cannot now

claim that he was actually unsatisfied with his trial counsel because of counsel's alleged failure to . . . interview a certain witness." Brief for appellee at 25.

We disagree with the State that the record allows us to resolve this claim on direct appeal. Because our record is devoid of any information Bradley might have possessed, we cannot analyze whether counsel's discovery of such information would have had an effect on Thomas' decision to accept the plea agreement. And while Thomas may have expressed satisfaction with his counsel's efforts during the plea colloquy, we do not know from this record what Thomas knew at that time about any efforts his counsel had made to interview Bradley. We also note that in *State v. Blake, supra*, the defendant likewise stated at the plea colloquy that he was satisfied with his counsel and believed he was competent. Even so, we held that we could not resolve a claim that counsel was ineffective for failing to interview potential witnesses. We reach the same conclusion here. Thomas' claim that his counsel was ineffective for failing to investigate and interview Bradley was sufficiently raised but cannot be resolved on direct appeal.

## 4. Excessive Sentences

### (a) Additional Background

As noted above, the district court sentenced Thomas to consecutive terms of imprisonment of 26 to 32 years for conspiracy to commit robbery and 14 to 20 years for conspiracy to commit burglary. Before it issued its sentencing decision, the district court stated:

> We've had a lot of inconsistent stories about what happened that night of July 24th, but really the only constant was that you were the mastermind behind that failed robbery.
>
> You set these events in motion. You even supplied the masks to be used. I'm not clear about who supplied the guns, but I don't think it matters. You knew and planned for . . . Green and . . . Gresham to break down the door

at 3 a.m. and enter the house, which you knew was filled with children, armed with guns, in order to steal marijuana and money that you knew were there from your previous contacts with . . . Craig. . . .

. . . [T]his was a crime of violence based on greed, and it appears that that was primarily your greed. It was primarily your idea to do this robbery which led to the deaths of the two individuals, and I think we're all sorry for that.

But . . . as [the prosecutor] points out, your criminal history does stand out because your crimes have been so frequent. As he argues, you're only able to stay out of trouble when you're incarcerated.

The district court also observed that a habitual criminal allegation had been dropped pursuant to the plea agreement. The district court determined that the severity of the crimes and the need to protect the public warranted lengthy prison sentences.

### (b) Standard of Review

[18] A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

### (c) Analysis

[19,20] Thomas' sentences were within statutory limits. When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *Id.* A judicial abuse of discretion exists only when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

[21,22] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background,

(5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *Id.* The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Thomas argues the district court abused its discretion by placing undue weight on his criminal history and failing to sufficiently consider several of the other relevant sentencing factors. We see no evidence that the district court abused its discretion. The district court stated that it reviewed the presentence investigation report, which included information concerning all of the factors to be considered by a sentencing court. See *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). Further, we have rejected the notion that a sentencing court is required to articulate on the record that it has considered each sentencing factor and to make specific findings as to the facts that bear on each of those factors. *Id.*

Finally, we disagree that the district court placed undue weight on Thomas' criminal history. Thomas' criminal history was extensive. Thomas has previously been convicted multiple times of terroristic threats, theft by unlawful taking, disturbing the peace, and possession of marijuana. He has also been convicted of, among other things, second degree assault, third degree assault, theft by shoplifting, unauthorized use of a financial transaction device, and attempted burglary.

## IV. CONCLUSION

We find no error on the part of the district court and thus affirm Thomas' convictions and sentences.

AFFIRMED.